UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADRIANE W.,

                          Plaintiff,

v.                                                          3:18-CV-0187
                                                            (TWD)
COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                     JUNE L. BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### DECISION and ORDER

Currently before the Court, in this Social Security action filed by Adriane W. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14, 15.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for

judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed and Plaintiff's Complaint is dismissed.

# I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1972, making her 37 years old at the alleged onset date and 45 years old at the date of the ALJ's December 2017 decision.  Plaintiff reported completing two years of college.  She has previous work as a janitor, teacher's aide, clerk, guard, and babysitter (as characterized by the vocational expert ("VE") at the October 2017 administrative hearing).  Plaintiff has generally alleged disability due to arthritis in her back and legs.

## B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on February 7, 2011, alleging disability beginning January 1, 2010.  Plaintiff's applications were initially denied on May 19, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at two administrative hearings before ALJ Edward I. Pitts on May 29, 2012, and June 18, 2012, respectively.  (T. 78-153, 899-964.[1])  It appears Plaintiff amended her alleged onset date to February 1, 2011, at the June 2012 administrative hearing.  (T. 81-85.)  On July 17, 2012, ALJ Pitts issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 174-88.)  On June 26, 2013, the Appeals Council remanded the case for further consideration of Plaintiff's medically determinable impairments.  (T. 189-93.)

Plaintiff appeared at a subsequent hearing before ALJ Pitts on December 24, 2013.  (T. 32-77, 965-1010.)  On April 2, 2014, ALJ Pitts issued a written decision finding Plaintiff was not

---

[1]    The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

disabled under the Social Security Act. (T. 15-31, 872-88.) On April 22, 2015, the Appeals Council denied Plaintiff's request for review, making ALJ Pitt's April 2014 decision the final decision of the Commissioner. (T. 1-6, 866-71.)

Plaintiff filed a Complaint in the United States District Court for the Northern District of New York on May 27, 2015. (T. 852-65.) On December 1, 2015, this Court ordered remand for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) upon stipulation of the parties. (T. 842-45, 848-51.) On September 19, 2016, the Appeals Council remanded the case, indicating that upon remand the ALJ would (a) further evaluate whether Plaintiff's self-employment work activity during the period at issue constituted substantial gainful activity, (b) obtain additional evidence concerning her impairments in order to complete the administrative record, (c) if available, obtain evidence from a medical expert to clarify the nature and severity of her impairments, (d) give further consideration to the non-treating source opinion from Lawrence Wiesner, D.O., and the nurse practitioner ("NP") opinion from Ryan Little, FNP, and explain the weight given to such opinion evidence, (e) further evaluate whether Plaintiff's use of a cane is medically necessary, (f) further evaluate her alleged symptoms and provide appropriate rationale, (g) give further consideration to Plaintiff's maximum residual functional capacity ("RFC") and provide appropriate rationale; and (h) if necessary, obtain supplemental evidence from a VE. (T. 836-41.)

Plaintiff appeared at an administrative hearing before ALJ John P. Ramos on October 12, 2017. (T. 787-835.) On December 4, 2017, ALJ Ramos issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 763-86.) Plaintiff then filed a new Complaint in the United States District Court for the Northern District of New York on February 13, 2018. (Dkt. No. 1.)

3

## C.     ALJ Ramos' December 2017 Decision

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 766-78.)  The ALJ found Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2016.  (T. 769.)  He found Plaintiff has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.  *Id*.  The ALJ determined Plaintiff's lumbar spine disorder and obesity are severe impairments.  (T. 770.)  The ALJ found Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 771-72.)  The ALJ found Plaintiff had the RFC to perform sedentary work except

> she retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; and regularly attend to a routine and maintain a schedule.  She can relate to and interact with others to the extent necessary to carry out simple tasks and she can handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance for simple work and handle usual work place changes and interactions associated with simple work.  [She] requires the use of a cane to ambulate but retains the ability to carry small objects in her free hand.  She requires the ability to change position at will but need not leave the work station or area.  She can sit for up to 30 minutes at a time.

(T. 772.)  The ALJ determined Plaintiff is unable to perform any past relevant work.  (T. 723.)  The ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform.  (T. 776-78.)  The ALJ therefore concluded Plaintiff is not disabled.

## D.     The Parties' Contentions

Plaintiff contends the ALJ erred in finding Plaintiff's psychiatric impairments were not severe.  (Dkt. No. 14 at 10-13.)  Plaintiff also argues the ALJ improperly determined the RFC

which is not supported by substantial evidence because he improperly assessed the medical

opinions, substituted his lay opinion, did not properly account for Plaintiff's mental impairments,

and did not include any non-exertional postural limitations. *Id*. at 13-20. Plaintiff also argues

the ALJ made an improper credibility[2] determination. *Id*. at 21-23. Plaintiff further argues the

ALJ's step five determination is not supported by substantial evidence because the RFC

determination does not account for the full extent of Plaintiff's exertional and non-exertional

limitations and the ALJ's hypothetical question to the VE similarly did not include Plaintiff's

true limitations. *Id*. at 23-24. In response, the Commissioner contends the ALJ's decision

applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 15 at 6-

20.) Plaintiff submitted a motion to allow for a reply brief. (Dkt. No. 17.) The Court denied

Plaintiff's motion and has not considered Plaintiff's reply brief when determining this appeal.

(Dkt. No. 18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

---

[2] The Court notes although Plaintiff does not cite to a specific regulation or ruling within her argument pertaining to credibility, in 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p. SSR 16-3p, 2017 WL 5180304 (republished Oct. 25, 2017, for clarification of the applicability date and reflecting revised regulations which became effective on March 27, 2017, but otherwise unchanged). As noted by the Commissioner, SSR 16-3p eliminated the use of the term "credibility" from the Social Security Administration's ("SSA") regulatory policy, and clarified that an ALJ's evaluation of a claimant's subjective assertions regarding her symptoms is not intended to be an examination of the claimant's character. Rather, the ALJ's goal is to assess the degree to which the claimant's allegations are consistent with the other evidence of record. (Dkt. No. 15 at 16 n.5.)

correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

**III.    ANALYSIS**

**A.      Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Impairments**

At Step Two, the ALJ must determine whether the claimant has a severe impairment that

significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. §§

404.1520(c), 416.920(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ

found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).

Here, at Step Two, the ALJ found Plaintiff's lumbar spine disorder and obesity to be severe impairments. (T. 770.) Plaintiff argues the ALJ erred in failing to find her psychiatric impairments severe or discuss these issues in his RFC analysis and in forming the mental RFC based on his lay interpretation of the medical records without the assistance of any medical opinion. (Dkt. No. 14 at 10-13.) The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ found at least one severe impairment at Step Two and continued the sequential evaluation while providing sufficient explanation of his analysis of Plaintiff's alleged mental impairments. (T. 770-78.) The ALJ explained Plaintiff had not established a severe mental impairment that would meet the durational requirement of the Act and summarized Plaintiff's mental health treatment. (T. 770.) The ALJ indicated, given the dearth of mental health treatment for a period of 12 continuous months, he found that, while Plaintiff experienced periods of psychological symptoms affecting her functioning, these symptoms did not significantly impair her functioning for 12 continuous months. *Id*. Within his subsequent RFC analysis, the ALJ also noted he had accounted for Plaintiff's reported side effects, her testimony of chronic pain, and her non-severe psychological impairments by including mental limitations within the established RFC. (T. 775.)

The ALJ also followed the special technique in considering Plaintiff's alleged mental impairments and found she had no restriction in understanding, remembering or applying information, at most mild difficulties in interacting with others, at most mild difficulties in maintaining concentration, persistence or pace, and no difficulties in adapting or managing

9

oneself.  (T. 770-71.)  The ALJ further noted that Plaintiff stated she could follow spoken and written instructions, denied having problems getting along with people in authority, family, friends or neighbors, denied ever losing a job due to problems getting along with people, did not report any difficulties with handling stress or changes in her schedule, and acknowledged she could finish what she started despite reported attention deficits.  (T. 395-405, 771.)

Second, the ALJ's overall decision reflects careful consideration of Plaintiff's mental impairments and related limitations as well as the objective evidence of record.  (T. 770-76.) The Court notes the RFC includes limitations including the indications that Plaintiff retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, and handle reasonable levels of simple work-related stress in that she can make decisions directly related to the performance of simple work and handle work place changes and interactions associated with simple work.  (T. 772.)

Third, it does not appear the ALJ relied solely on his own lay interpretation of the medical records to find that Plaintiff's alleged mental impairments were not severe.  The ALJ relied at least in part on the medical opinions of Dr. Wiesner and NP Little which did include opined limitations regarding concentration and work pace.  (T. 541, 725, 773, 1326-27.)  Further, the ALJ's summary of Plaintiff's reports and her limited mental health treatment records indicates that he also relied at least in part on the lack of mental health treatment and Plaintiff's own reports, as indicated above.  *Id*.

Thus, because the ALJ found at least one other severe impairment, continued with the sequential evaluation, and provided explanation showing he adequately considered the evidence

related to Plaintiff's non-severe mental impairments, the Court finds any error by the ALJ in failing to find Plaintiff's alleged mental impairments severe to be harmless.

Therefore, the Court finds substantial evidence supports the ALJ's findings at Step Two. As such, remand is not required on this basis.

### B. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

RFC is defined as "what an individual can still do despite his or her limitations[.] Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999) (internal citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir.

2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are

situations where the treating physician's opinion is not entitled to controlling weight, in which

case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist."

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  The factors

for considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant.  20

C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### i.      *The ALJ's Analysis of the Opinion Evidence*

In April 2012, Dr. Wiesner performed an independent orthopedic medical examination.

(T. 535-45.)  Plaintiff reported low back pain with radiation to both legs.  (T. 535.)  She managed

her pain with Percocet and Flexeril, as well as over-the-counter anti-inflammatory medications.

(T. 535-36.)  She stated these medications caused fatigue, difficulty concentrating, and

sleepiness.  (T. 536-37.)

On examination, she had limited range of motion in the lumbar spine, increased pain, and

spasming in her low back.  (T. 537.)  Dr. Wiesner assessed chronic low back pain with a need to

continue work up in the form of an MRI.  (T. 538.)  He opined Plaintiff was significantly

restricted for any repetitive bending, crouching, or kneeling; restricted from carrying anything

greater than 10 pounds; and restricted significantly from repetitive walking, pulling, pushing, and

carrying.  (T. 538.)  He opined Plaintiff requires freedom to change positions at will and would

be unable to sit for a long period of time due to her low back.  *Id*.  Plaintiff could stand and walk

less for than 2 hours and sit for less than 2 hours during an 8 hour day.  (T. 539.)  She could sit

for 15 minutes before changing positions, stand for 10 minutes before changing positions,

needed to walk around every 15-20 minutes, needed the opportunity to shift positions at will, and

would need to lie down 2-3 times per day.  *Id*.  She could frequently lift up to 5 pounds, rarely

twist or stoop, occasionally reach, frequently handle and finger, and never crouch.  (T. 540.)  She

was likely to be absent more than 3 days per month.  (T. 540.)  Dr. Wiesner indicated Plaintiff

had one or more impairments causing a need for changes in position or posture more than once

every 2 hours and affecting walking, interfering very seriously with her ability to independently

initiate, sustain or complete normal activities of daily living.  (T. 541.)  He also noted her

medications caused fatigue and opined a moderate limitation in concentration and a marked

limitation in the ability to sustain work pace.  *Id*.  He noted Plaintiff had suffered from these

limitations for greater than 2 years.  (T. 542.)

In July 2013, treating nurse practitioner NP Little completed a physical RFC assessment

and questionnaire, indicating Plaintiff would need more than one 10-minute rest period per hour

and gainful employment would likely result in frequent absences.  (T. 725.)  He also opined

Plaintiff had moderate limitations in concentration and the ability to sustain work pace.  *Id*.  He

opined Plaintiff could sit for 4 hours, should change positions every 30 minutes, could

stand/walk for 2 hours, could lift 5-10 pounds up to 3 hours per day, and could lift up to 5

pounds 3-8 hours per day.  (T. 726.)  NP Little noted the opined limitations were present for the

time period between June 2011 to July 2013.  *Id*.

In October 2017, NP Little submitted another medical source statement indicating a

diagnosis of degenerative disc disease in the lumbar spine which would cause pain, fatigue,

diminished concentration, and a need to rest at work. (T. 1326.) He also opined Plaintiff would be off-task more than 33 percent of the day and absent more than 4 days per month with Percocet causing sedation and fatigue. (T. 1327.) He opined Plaintiff could sit for 4 hours, should change positions every 30 minutes, could stand/walk for 2 hours, could occasionally lift up to 10 pounds, and could frequently lift up to 5 pounds. *Id.* NP Little indicated the opined limitations were present between July 2011 to October 2017. *Id.*

In his decision, the ALJ noted the Appeals Council directed further consideration be given to the opinions from Dr. Wiesner and NP Little. (T. 773.) The ALJ afforded limited weight to Dr. Wiesner's opinion because the limitations identified were not supported by the clinical or objective findings, noting Dr. Wiesner only examined Plaintiff one time, he did not have an ongoing treatment relationship with Plaintiff, and his report showed somewhat limited range of motion of the spine but no recorded neurological abnormalities. (T. 537, 773.) The ALJ afforded partial evidentiary weight to NP Little's opined limitations for standing, walking, lifting, and alternating positions every 30 minutes because he provided Plaintiff with treatment during the time period under review. (T. 773.) The ALJ also noted Plaintiff was able to sit without apparent discomfort for about 45 minutes at the administrative hearing, which supported the conclusion she could sit for 30 minutes at a time. *Id.* The ALJ indicated he had accounted for these limitations within the RFC by limiting Plaintiff to a range of sedentary work with a sit/stand option. *Id.*

The ALJ also noted the remaining aspects of Dr. Wiesner's opinion and NP Little's opinions were not fully supported by the objective evidence in the record including neurological records from April 2011 indicating Plaintiff's gait was slow but steady and stable, she had full strength in the lower extremities, sensation was good to light touch, and reflexes were 2/4 and

equal bilaterally at the patella and Achilles.  (T. 524, 773.)  The ALJ indicated that, while the evaluation showed evidence of limited range of motion in the lumbar spine, multiple trigger points along the lower back and thoracic spine, and tight straight leg raise testing, the clinical findings did not support the extreme limitations identified by Dr. Wiesner and NP Little.  *Id*.

The ALJ noted that review of Plaintiff's x-rays also showed good alignment of her bones, some mild disc height loss at L5-S1, and no sign of severe facet arthropathy and that, despite being recommended conservative treatment only, Plaintiff declined physical therapy and acknowledged medication provided her with some relief.  (T. 523-24, 773-74.)

The ALJ indicated these opinions were also not fully supported by the clinical findings shown in NP Little's treatment records.  (T. 626-64, 774, 1280-1325.)  The ALJ pointed to specific treatment notes including (a) one from April 2011 indicating Plaintiff had tenderness at the L5-S1 paraspinal bilaterally but that NP Little did not identify any other abnormal clinical findings, (b) another from November 2011 indicating Plaintiff's balance and gait were intact and no motor weakness or sensory loss, (c) no neurological abnormalities indicated in March 2016, (d) a November 2016 note indicating Plaintiff's back pain was stable (which contradicted her testimony of worsening lower back pain), (e) mild pain with range of motion of the lumbar spine noted with normal gait, balance, coordination, fine motor skills and deep tendon reflexes in May 2017, and (f) NP Little's notation in June 2017 that Plaintiff denied experiencing back pain and observation of normal extremities, sensation, and deep tendon reflexes.  (T. 630, 645, 774, 1282-83, 1288, 1290, 1298-99.)  The ALJ indicated these relatively minimal clinical findings identified by NP Little did not support the significant functional limitations opined by him and Dr. Wiesner.  (T. 774.)  The ALJ also noted NP Little's conclusion that Plaintiff would be absent

from work more than 4 days per month and off-task more than 33 percent of the day was speculative and not based on any objective findings. *Id*.

ii.      ***The Court's Analysis***

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ substituted his own lay opinion, improperly weighed the opinions of Dr. Wiesner and NP Little, failed to include any non-exertional postural limitations in the RFC, and ignored the more significant findings in the record supporting further limitations than those in the RFC. (Dkt. No. 14 at 13-21.) The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ indicated he considered the objective medical evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p and he considered the opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927. (T. 772.) Further, the ALJ's overall decision indicates a detailed consideration of the opinions as well as the medical evidence and Plaintiff's testimony, subjective reports, and activities of daily living. (T. 772-76.)

Second, the ALJ provided numerous specific reasons for the weights afforded to the opinions from Dr. Wiesner and NP Little and supported these reasons with citations to the record. (T. 773-75.) Indeed, the ALJ acknowledged the Appeals Council order directing further consideration of these opinions and proceeded to discuss these opinions and the limitations opined therein with sufficient detail and careful consideration. (T. 773, 836-41.) Additionally, the ALJ further explained he accounted for the limitations observed at the administrative hearing (indicating Plaintiff was able to sit without apparent discomfort for about 45 minutes) within the RFC by limiting Plaintiff to a range of sedentary work with a sit/stand option. (T. 773.)

Third, the Court does not find support for Plaintiff's argument that the ALJ improperly substituted his own lay opinion for that of Dr. Wiesner and NP Little. Rather, it was within the ALJ's purview to review all the evidence before him, including the medical opinions and treatment records, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016) (citing *Matta*, 508 F. App'x at 56), *report and recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Further, an ALJ does not have to adhere to the entirety of one medical source's opinion in formulating the RFC. *See Matta*, 508 F. App'x at 56; *Zongos v. Colvin*, 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Fourth, as indicated above in Section III.A. of this Decision and Order, although Plaintiff contends the ALJ erred in considering her alleged mental impairments and points out that his RFC analysis contains no discussion of her psychiatric issues, the Court's review of the ALJ's overall decision indicates he adequately considered these alleged impairments in finding them non-severe and in determining Plaintiff's RFC. (Dkt. No. 14 at 11-13.) Plaintiff further contends that the ALJ formed the mental RFC based solely on his lay interpretation of the medical records and without the assistance of any medical opinion, but the Court does not find this argument persuasive. *Id*. at 11-12. There is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC. *See Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10. It is also clear the ALJ relied at least in part on the medical opinions of Dr. Wiesner and NP Little which did include opined limitations regarding concentration and work pace by affording them some weight. (T. 541, 725, 773, 1326-27.)

Finally, the Court's review of the record and the ALJ's overall decision do not support Plaintiff's argument that the ALJ erred in failing to include any non-exertional postural limitations in the RFC or that the ALJ ignored more significant findings in the record supporting further limitations than those in the RFC. (Dkt. No. 14 at 13-21.) The ALJ specifically noted he had accounted for Plaintiff's use of a cane, reported side effects, testimony of chronic pain, non-severe psychological impairments, and obesity. (T. 537, 748, 775-76, 1123.)

Further, as indicated above and in Section III.A. of this Decision and Order, the ALJ's analysis of Plaintiff's impairments at Step Two and her RFC is supported by substantial evidence. Plaintiff's arguments do not establish further limitations than those included in the RFC and the Court will not now reweigh evidence which was before the ALJ. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18,

2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)), *report and recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *see also Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court defers to the Commissioner's resolution of conflicting evidence" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on these bases.

### C. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms." *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (alteration in original) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p).

The evaluation of symptoms involves a two-step process.  *See* SSR 16-3p, 2017 WL 5180304, at *2.[3]  The SSA "will first consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms."  *Id*. at *3.  "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the SSA will then] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]"  *Id*.  If the SSA cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, it will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. at *6.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, factors to be considered include: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7-8.

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and

---

[3]     The Court notes that the standard for evaluating subjective symptoms has not changed in the regulations.  Rather, use of the term "credibility" has been eliminated and SSR 16-3p makes it clear that the subjective symptom evaluation is not an evaluation of the claimant's character. *See* SSR 16-3p, 2017 WL 5180304.

other evidence in the record. (T. 773-74.) Plaintiff argues this determination is not supported by substantial evidence and that the ALJ improperly relied on Plaintiff's conservative treatment, lack of candidacy for back surgery, and activities of daily living. (Dkt. No. 14 at 21-23.) The Court finds these arguments unpersuasive for the following reasons.

The Court's review of the ALJ's overall decision indicates he adequately reviewed and summarized Plaintiff's allegations of disability, testimony, and subjective reports as well as the medical evidence in evaluating her symptoms. (T. 772-76.) The ALJ indicated he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. (T. 772.)

Further, the ALJ provided multiple reasons for his conclusions regarding these symptoms in light of the objective medical evidence. (T. 772-76.) For example, the ALJ explained that Plaintiff's subjective complaints were not fully consistent with the objective medical evidence in the record and that the record supported the conclusion she could perform a range of sedentary work, again citing to the record (including treatment notes from NP Little and Dr. Wiesner's examination report) to explain and support his conclusions. (T. 485, 491, 499, 524, 532, 537, 627, 345, 677, 727, 760, 774-75, 1134, 1147, 1171, 1282-83, 1288, 1290, 1298-99, 1301, 1303.) The ALJ noted Plaintiff had received conservative pain treatments and was not a candidate for back surgery with records indicating that she declined physical therapy and medication provided her with some relief. (T. 523-24, 532-45, 751, 775, 1297.)

The ALJ also indicated the diagnostic images of record did not support the degree of functional limitations alleged by Plaintiff including neurosurgical records from April 2011

noting a review of her x-rays showed good alignment of her bones, some mild disc height loss at L5-S1, and no sign of severe facet arthropathy. (T. 524, 775.) A July 2012 MRI of her lumbar spine showed no evidence of neural compression or right-sided abnormality, which the ALJ indicated was inconsistent with Plaintiff's complaint of back pain that radiated to her right leg. (T. 760, 775.) An October 2015 x-ray of her lumbosacral spine showed mild osteoarthritis. (T. 775, 1194.)

Finally, the ALJ indicated Plaintiff maintained a broad range of daily activities which was consistent with the established RFC, including her ability to care for her son, cook simple meals, and shop for groceries. (T. 396-99, 776.) The ALJ also noted that, at the administrative hearing, Plaintiff testified she lived by herself suggesting a much higher level of functioning than she was willing to acknowledge and she acknowledged she babysat for four children after her alleged onset of disability, which was consistent with the ability to perform the physical demands of sedentary work. (T. 776, 799-801, 804.) Contrary to Plaintiff's argument that the ALJ improperly relied on certain factors, it appears the ALJ relied on various factors in evaluating Plaintiff's symptoms in making his determination such as Plaintiff's conservative treatment history, lack of surgery candidacy, or activities of daily living. (Dkt. No. 14 at 21-23.)

The Court again notes that it is the ALJ's job to weigh the evidence of record, resolving any conflicts therein, and the Court will not reweigh that evidence now. *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10; *Warren*, 2016 WL 7223338, at *9; *Vincent*, 830 F. Supp. at 133. The Court finds the ALJ provided sufficient reasons for his evaluation of Plaintiff's symptoms with adequate explanation, enabling this Court to conduct meaningful review and conclude the ALJ's analysis is supported by substantial evidence. *See Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial

factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Based on the foregoing, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. Remand is therefore not required on this basis.

### D. Substantial Evidence Supports the Step Five Determination

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform including call out operator, order clerk, and addressing clerk. (T. 776-78.) Plaintiff argues the Step Five determination is not supported by substantial

evidence because neither the RFC determination nor the ALJ's hypothetical question posed to the VE accounts for the full extent of Plaintiff's exertional and non-exertional limitations. (Dkt. No. 14, at 23-24.) As indicated in Sections III.A., III.B., and III.C. of this Decision and Order, the Court has found that the ALJ's findings regarding Plaintiff's impairments, RFC, and symptoms are supported by substantial evidence. Plaintiff has not established further limitations than those included in the ALJ's hypothetical question and RFC. The ALJ properly relied on the VE's testimony in response to the hypothetical question reflecting the RFC and reasonably concluded that Plaintiff can perform other work in the national economy. (T. 776-78, 826-29.)

For these reasons, the Court finds the ALJ's Step Five finding is supported by substantial evidence. Therefore, remand is not required on this basis.

## IV.     CONCLUSION

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1.) is **DISMISSED**.

Dated: May 6, 2019
　　　 Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge